PARBERRY, RESPONDENT, *v.* WOODSON SHEEP COMPANY, FIRST NATIONAL BANK OF WHITE SULPHUR SPRINGS, INTERVENOR, APPELLANT.

[Submitted May 22, 1896.  Decided June 1, 1896.]

ATTACHMENT—*Intervention—Corporation—Purchase of stock.*—Where a creditor holding junior attachment on defendant's property, intervened in the action of the prior attaching creditor against the defendant and alleged that the notes sued on by the original plaintiff were given by the defendant company as the consideration for the pretended purchase by it of the plaintiff's stock in the company, and were void, a finding that the notes were not given for the stock, but for real and personal property sold by the plaintiff to the defendant company, is supported by evidence that at the time of the organization of the company, the capital stock of which consisted of 150,000 shares, the three trustees issued to themselves each one share of the capital stock of the company and a certificate for the balance of the stock to the plaintiff, upon which was endorsed an assignment transferring the stock to the company, which plaintiff immediately signed and redelivered; that the transaction was at the request of the trustees and done for their accommodation and wholly without consideration, and that thereafter the defendant company purchased of the plaintiff real estate and personal property, paying therefor part cash and the balance in the notes sued on with 125,000 shares of its capital stock as collateral security.

SAME—*Waiver of security.*—A finding that the claim of an attaching creditor, for which the defendant company had issued stock as collateral security, was not secured by any mortgage, lien or pledge upon real or personal property, at the time of the commencement of his action, is supported by evidence that the defendant company was then in debt $88,000 with assets estimated at from $25,000 to $49,000; that plaintiff, prior to beginning suit, mailed the stock which he considered of no value to the company's president; that the latter was then absent from the state, and the stock was re-mailed to plaintiff by another person, who appeared to represent the president of the company, and was received by a person in plaintiff's office and never actually returned to plaintiff; that on the return of the company's president the stock was delivered to him and retained without objection.   In such case the plaintiff could waive his rights to the pledge of the stock as security for his debt and attach the defendant's property.

*Appeal from Ninth Judicial District, Meagher County.*

ACTION by intervening creditor to determine priority of attachment liens. The case was tried before HENRY, J. Plaintiff had judgment below. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action by attachment, commenced in the district court of Meagher county, by the plaintiff against the defendants, on the 29th day of January, 1894, to recover the sum of $34,763.78 on certain promissory notes. The attachment affidavit is in the usual form, and the last clause of it reading as follows : ''And that the same·is now due, and that the payment of the same is not secured by any mortgage, lien, or pledge upon real or personal property.'' The writ was levied upon the property belonging to the defendant sheep company, and is the first in point of time. The summons in the action was duly served. The sheep company appeared in the action, and demurred to plaintiff's complaint. February 24, 1894, the intervenor also began an attachment suit against the Woodson Sheep Company. On the 26th day of February, 1894, the intervenor filed its complaint in intervention in the case. On this last day, plaintiff was permitted to amend his affidavit in attachment. Such amendment consisted in the statement to the effect that at one time plaintiff had 125,000·shares of the capital stock of the sheep company as collateral security for his debt, and that he had returned the same to the company before commencing this suit, and further facts showing that such stock was nugatory and worthless by reason of insolvency of said sheep company; such insolvency having arisen subsequent to the original pledge of the stock by the company's incurring further indebtedness, and by reason of its disposing of part of its property, and by reason of great depreciation in value of the residue.

The intervenor, in its complaint of intervention, contends that, at the time plaintiff commenced his action by attachment, his claim was secured by the 125,000 shares of the capital

stock mentioned above, and that, therefore, he was not entitled to his attachment.    The intervenor further alleges in its complaint that the defendant Woodson Sheep Company was organized about the 3d day of July, 1891, with a capital stock of $150,000, divided into 150,000 shares, of $1 each; and that shortly after such organization, plaintiff purchased 149,997 shares of the capital stock thereof; and that a certificate therefor was thereupon duly issued and delivered to said plaintiff by said corporation; and that thereafter plaintiff made a pretended sale of 149,997 shares of said capital stock to said corporation, at the agreed price of $72,000, and received for said stock different notes, upon which he brings this action, as a part of the consideration therefor; and that the sole consideration for said notes was the transfer of said shares of stock to said defendant, but of which fact and transaction this intervenor had no knowledge or intimation until long after said indebtedness of said Woodson Sheep Company to the intervenor had been incurred, and by reason thereof the intervenor contends that the notes sued on are null and void.

The record shows that on February, 1891, the plaintiff was the owner of a large quantity of property, consisting of real estate contracts with the Northern Pacific Railroad Company for the purchase of certain railroad lands, sheep and ranch equipments, such real estate amounting to some 8,000 acres, and the personal property consisting of 14,600 head of sheep, and considerable other property.

On July 3, 1891, John A. Woodson, Waller Shobe and W. B. Baker organized the Woodson Sheep Company.    On July 14th, in said year, the first meeting of said persons, as trustees of said company, was held.    To complete their organization, these gentlemen issued to themselves each one share of the capital stock of the company, and 149,997 shares to the plaintiff.    At the time the certificate for the 149,997 shares was issued to plaintiff, it had indorsed upon it an assignment or words transferring the stock to the company, which at the request of the trustees, was immediately signed by the plaintiff, and the certificate redelivered by him to the company.    The

plaintiff had never subscribed for any of the stock of the company. The transaction above stated appears to have been solely at the request of the gentlemen named as trustees of said company, and for their accommodation, and without any other consideration or for any other purpose. At that time the company had not yet commenced to do business, nor had it any assets or debts. Prior to said 14th of July, there had been some negotiations between the gentlemen mentioned and the plaintiff looking to the purchase of the real and personal property of the plaintiff. Such purchase was consummated on August 14, 1891; the company paying therefor $12,280 in cash, and delivering their three notes dated July 15, 1891, and being, respectively, for $9,146, $22,550 and $24,803. As collateral security, the company delivered to plaintiff 125,000 shares of its capital stock. These shares of stock were the only security held by plaintiff for this indebtedness. These notes were partly paid before the commencement of this suit, leaving the amount sued for unpaid.

The Woodson Sheep Company became indebted to intervenor in October, 1893. At the time plaintiff commenced this suit, the defendant company was in debt $88,000, and its assets were estimated at from $25,000 to $49,000. Prior to the beginning of this suit, the plaintiff returned the stock held by him as collateral security to Woodson, the president of the defendant company, because he considered it of no value. Plaintiff placed the stock in an envelope, and directed it to John A. Woodson, White Sulphur Springs. At that time Woodson was absent from the state, in Chicago. The lot was received by a Mrs. Baker, who seemed to represent Woodson, and she remailed the stock to the plaintiff. The stock, however, was received by a Mr. Hampton, in plaintiff's office, and was never actually returned to plaintiff; but, on Woodson's return from Chicago, the stock was delivered to him, and he kept possession without objection, and had possession of it at the time this suit was tried.

The case was tried by the court without a jury. The court found as a fact that the notes sued on by plaintiff were not

given for the stock of the Woodson Sheep Company, but for the property embracing real estate, sheep and other personal property sold by plaintiff to the Woodson Sheep Company. The court also found, as a matter of fact, that, at the time of the commencement of plaintiff's action, his claim was not secured by any lien, pledge or mortgage on any personal or real property; and, on these findings, the court rendered judgment in favor of plaintiff.

The intervenor made a motion for a new trial, which was overruled, and from the judgment and order overruling the motion for a new trial the intervenor appeals.

*McConnell, Clayberg & Gunn, Smith & Gormley,* and *Thompson & Maddox,* for Appellant.

I.   The affidavit for attachment is jurisdiction.   It must be sufficient under the statute to authorize the issuance of the writ and must be true in fact or the proceeding is void. (Waples on Attachment, §§ 112, 143, 157; Drake on Attachments, §§ 86, 87 and 89; *Murphy* v. *Montandon,* 29 Pac. 851; *Mentzer* v. *Ellison,* 43 Pac. 464.)   Where, therefore, a plaintiff has had security for his claim, but the security has become insufficient or nugatory, the statement in an affidavit for attachment that the payment of the claim ''is not secured by any mortgage, lien or pledge upon real or personal property'' is untrue, because under the statute the ground upon which the writ is asked does not exist.   (*Murphy* v. *Montandon,* 29 Pac. 851; *Mathews* v. *Densmore,* 43 Mich. 461; *Gessner* v. *Palmateer,* 89 Cal. 89; *Willman* v. *Friedman,* 35 Pac. 37.)   An affidavit in the alternative is not good.   (*Wilke* v. *Cohn,* 54 Cal. 212; *Elling* v. *Kirkpatrick,* 6 Mont. 119.) Where the security has become insufficient or nugatory by the act of the plaintiff, he is not entitled to an attachment.   (*Page* v. *Latham,* 63 Cal. 75; *Beaudry* v. *Vache,* 45 Cal. 3.)

II.   Plaintiff undertook to cure the infirmities of the original affidavit by the filing of an amended affidavit.   The amendment was unauthorized because (1) the original affidavit was void; (2) because appellant had acquired a lien upon the

property of the said Woodson Sheep Company by virtue of its writ of attachment and filed its complaint in intervention, attacking plaintiff's attachment before said amendment was offered or made. ( *Whitney* v. *Brumette,* 15 Wis. 57; *Witte* v. *Meyer,* 11 Wis. 300; Drake on Attachments, §§ 113, 87, 89; *Winters* v. *Pearson,* 72 Cal. 553; *Rupert* v. *Haug,* 87 N. Y. 141.)

III.    It is well established that where the writ was issued without jurisdiction a subsequent attaching creditor can take advantage of this fact.    (*National Papetire* v. *Kinsey,* 23 Atl. 275; *Bateman* v. *Ramsey,* 12 S. W. 235; *Davis* v. *Eppinger,* 18 Cal. 379; *Speyer* v. *Thurles,* 21 Cal. 227; *Coghill* v. *Marks,* 29 Cal. 673.)

IV.    The provisions of the statute as to what a process shall contain are mandatory, and a failure to observe the same renders the process void.    (*Place* v. *Riley,* 98 N. Y. 1; *Sawyer* v. *Robertson,* 11 Mont. 416; *Sidwell* v. *Schumacher,* 99 Ill. 433.)

V.    The notes described in plaintiff's complaint were executed and delivered by the defendant corporation in payment for 149,997 shares of the capital stock of said company theretofore issued to the plaintiff and were therefore void.    Even in the absence of a statutory prohibition a corporation cannot purchase or deal in its own stock.    (Morowetz on Corporations, §§ 112, 431, 434, 793; *Crandall* v. *Lincoln,* 52 Am. Rep. 560; *Copen* v. *Greenlease,* 38 Ohio St. 275; *Heggie* v. *Loan Association,* 12 S. E. 275; *Union National Bank* v. *Douglas McCrary,* 86; *Glenn* v. *Scott,* 28 Fed. 804; *German Savings Bank* v. *Wulfekuhler,* 19 Kan. 60; *Bank of Ft. Madison* v. *Alden,* 129 U. S. 372; *Abeles* v. *Cochran,* 31 Am. Rep. 194; *State* v. *Association,* 35 Ohio St. 263; *Morgan* v. *Lewis,* 17 N. E. 568; Thompson on Corporations, § 2054 *et seq.*; *Galvin* v. *MacM. Co.,* 14 Mont. 508; Cook on Stock and Stockholders, § 312; *In re Columbia Bank,* 23 Atl. 626.) The English authorities are unanimous in support of the doctrine that a corporation can not purchase or deal in its own stock.    (Brice on Ultra Vires, 94; Beach on Corporations, section 395.)

VI.   Although intervenor was not a creditor of the corporation at the time of the pretended sale of said stock and the execution and delivery of the notes in question to the plaintiff Parberry, it has a right to complain of such transaction upon the principle that the capital or assets of a corporation is a trust fund for the benefit of creditors, and any distribution of such fund to, or withdrawal thereof by, its stockholders is a wrong upon subsequent as well as existing creditors. (*Kohl* v. *Lilienthal*, 81 Cal. 378; *Williams* v. *Boice*, 38 N. J. E. 364; *McKusick* v. *Seymour*, 50 N. W. 1116; *Alling* v. *Ward*, 24 N. E. 551; Cook on Stock, Secs. 42 and 199.)

*Max Waterman* and *H. G. McIntire*, for Respondent.

I.   The plaintiff had the right to return his security if he saw fit to do so.   (Drake on Attachment, 6th Ed. § 35; *Woody* v. *Jamieson*, 40 Pac. 61.)   Our statute expressly permits an attaching creditor to disregard nugatory or inadequate security. (Compiled Statutes p. 104, § 181; *Elling* v. *Kirkpatrick*, 6 Mont. 119.)   The affidavit was amendable.   (*Josephi* v. *Mady Clothing Co.*, 13 Mont. 203.)   It is true that under certain contingencies a creditor is permitted to intervene in an attachment suit and assail the validity of a prior attachment, but this right is confined to such irregularities as affect substantial rights of the creditor, such as which if allowed to prevail would be a fraud upon him, as for instance, where the debt sued on is fictitious, or fraudulent, or prematurely brought. (Drake on Attachment, 6th Ed. Sec. 273; Waples on Attachment, p. 477; *Fridenberg* v. *Pierson*, 18 Cal. 155; *Patrick* v. *Montador*, 13 Cal. 444; *Leppel* v. *Beck*, (Colo.) 31 Pac. 186; *Foster* v. *Jones*, 1 McCord, 116; *Nenny* v. *Schluter*, 62 Tex. 329; *Rudolf* v. *McDonald*, 6 Neb. 164; *Orr* v. *Lindsey Shoe Store*, 18 S. W. 309; *Gilkerson-Sloss Com. Co.* v. *Bond*, 11 So. Rep. 221.)

II.   In the absence of express statutory prohibition a company may purchase its own stock.   This conclusion has been reached by every court that has had the question before it, with possibly the exception of those of two or three states.

(Cook on Stocks, Etc. (2nd Ed.) § 311; Boone on Corpora-
tions, § 107; Beach on Corporations, 395; *Ex Parte
Holmes*, 5 Cowen, 426; *City Bank* v. *Bruse*, 17 N. Y.
507; *American R. Co.* v. *Haven*, 101 Mass. 398; *Dupee*
v. *Boston Water Power Co.*, 114 Mass. 37; *Coleman* v.
*Columbia Oil Co.*, 51 Pa. St. 74; *Chicago Etc. R. R.
Co.* v. *Marsielles*, 84 Ill. 145; *Clapp* v. *Peterson*, 104 Ill.
220; *Fraser* v. *Ritchie*, 8 Bradw. 554; *Hartridge* v. *Rock-
well*, (Ga.) R. M. Charlton 260; *Blalock* v. *Kernersville M'f'g
Co.*, (N. C.) 14 S. E. Rep. 501; *Snyder* v. *Trinitas Petroleum
Co.*, (Cal.) 13 Pac. 479; *Bank* v. *Transportation Co.*, 18 Vt.
138; *First Nat. Bank* v. *Salem Capital Flour Mills Co.*, 39
Fed. p. 96, (a case from Oregon); *Iowa Lumber Co.* v. *Foster*,
49 Ia. 25, S. C. 31 Am. Rep. 140; *Rollins* v. *Shaver Wagon
and Carriage Co.*, (Iowa) 45 N. W. Rep. 1037.) The reason
given by such cases as hold the contrary is that by a sale to
the corporation the stockholder's statutory liability to corpo-
ration creditors is destroyed. (*Coppin* v. *Greenleese*, 38 Ohio
St. 275.) But no such reason can be advanced in Montana,
for here the stockholder's liability is only for the amount he
may owe the company for unpaid stock subscriptions. (Comp.
St. p. 727, Sec. 457.)

PEMBERTON, C. J.—The counsel for appellant contend that
the findings of the court, set out substantially in the state-
ment, are not supported by the evidence. It appears that the
only thing plaintiff ever did tending to show that he was ever
the owner or purchaser of any of the stock of the defendant
company was to receive a certificate of the stock of the com-
pany from the hand of the president, which certificate had on
the back of it an endorsement transferring the stock back to
the company, and to sign such endorsement, and hand the
certificate back to the president. It was shown that there was
no consideration demanded, paid, promised, or contemplated
in this transaction; that there was no agreement ever pro-
posed, much less entered into, by which the company was to
sell, and plaintiff to purchase, any stock of the company. The

evidence is that he did not purchase any stock of the company. He permitted the trustees to issue to him the certificate of stock, with the understanding that he should immediately transfer it back to the company, for the sole purpose of accommodating the trustees in organizing the company. There could be no sale or purchase of the stock ordinarily unless there was an agreement in the minds of the parties to that effect. (21 Am. & Eng. Enc. Law, p. 9446, and authorities cited.) There is not in the evidence a pretense of any such agreement of the minds of the parties in this case. We therefore think there was ample evidence to support the finding of the court that the notes sued on by plaintiff were given for the property sold by plaintiff to the defendant company, and not for the stock of said company. To hold that by reason of the transaction between the parties in relation to the receipt and transfer of the certificate of stock, as shown above, plaintiff actually became a purchaser of the stock of the company; that his immediate transfer of the stock back to the company constituted a purchase by the company; that the notes sued on by plaintiff were given in consideration of the sale of said stock to the company, and are therefore null and void, for want of authority of the company to purchase its own stock,— would be, in effect, to hold that the plaintiff should, by such transaction, lose the property he sold to the company, forfeit his right to recover on the notes in suit, and render himself liable for the difference between the value of the property he sold to the company, to-wit: $72,000 and $149,997, the par value of the stock the appellant contends he purchased, and for which it is contended he executed the notes he is seeking to collect. Such a holding we think absolutely abhorrent to every principle of law, equity, and justice.

We think, too, that the finding of the court that plaintiff's debt was "not secured by any mortgage, lien, or pledge upon real or personal property" at the time of the commencement of this suit is amply supported by the evidence, the substance of which is contained in the statement, and need not be restated here. The plaintiff had the right, we think, to waive his

rights to the pledge of the stock to secure his debt and attach the property of the defendant company, to satisfy the debt for which the stock was pledged. (Drake on Attachment, (7th Ed.) § 39, and authorities cited; *Buck* v. *Ingersoll,* 11 Metc. (Mass.) 226; *Wooddy* v. *Jamieson,* (Idaho) 40 Pac. 61.)

The appellant contends that the trustees of the defendant company had no authority to execute the notes sued on by plaintiff, and that they were null and void, because given for the stock of the corporation; that the giving of the notes by the corporation was an act *ultra vires.*

It is also contended by the appellant that the court erred in permitting the plaintiff to amend his affidavit for attachment after the intervention of the intervenor.

Having held that the findings of the court are supported amply by the evidence, and believing that these findings are decisive of the real issues of the case, we deem it entirely unnecessary to treat these or any other errors assigned by appellant.

We think the case was fairly tried and the proper result reached by the trial court. The judgment and order appealed from are affirmed.

*Affirmed.*

HUNT, J., concurs. DE WITT, J., not sitting.

